1  Veronica M. Aguilar, Esq., SBN 153288
   THE LAW OFFICES OF VERONICA M. AGUILAR
2  402 West Broadway, Suite 1905
3  San Diego, California 92101
   (619) 238-1221 Telephone
4  (619) 563-1220 Fax

5

6  ATTORNEY FOR PLAINTIFFS, MICHAEL YOUNESSI and PACIFICA
   HOLDINGS LLC

7

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                 SANTA ANA DIVISION

12

13  MICHAEL YOUNESSI and            )  CASE NO.: SACV 12 - 02034 JST (JPRx)
                                    )
    PACIFICA HOLDINGS LLC, a        )  VERIFIED COMPLAINT FOR
14  California Limited Liability Company;  )  DAMAGES AND EQUITABLE
                                    )  RELIEF
15           Plaintiffs,            )    1. Declaratory Relief
                                    )    2. Violation of 12 U.S.C. § 2605
16             vs.                  )    3. Violation of 15 U.S.C. § 1692 et
                                    )       seq
17  J.P. MORGAN CHASE BANK, N.A., a )    4. Actual Fraud
    Delaware Corporation;           )    5. Negligent Misrepresentation
18                                  )    6. Violation of Business &
19  U.S. BANK NATIONAL              )       Professions Code §17200 et seq.
    ASSOCIATION, AS TRUSTEE OF      )    7. Cancellation of Void Contract
20  THE WAMU MORTGAGE PASS-         )    8. Demand for Accounting
    THROUGH CERTIFICATES SERIES     )    9. Quasi Contract
21  2007-OA4 TRUST; AND             )   10. Preliminary Injunction
22                                  )
    DOES 1 THROUGH 100, INCLUSIVE.  )      DEMAND FOR JURY TRIAL
23                                  )
24           Defendants.            )
                                    )
25

26

27        COMES NOW MICHAEL YOUNESSI and PACIFICA HOLDINGS, LLC,

28  ("Plaintiffs"), by and through their counsel, for their Complaint against Defendants

                                 -1-

J.P. MORGAN CHASE, N.A. (hereinafter "CHASE"), a Delaware Corporation, and the U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA4 TRUST, ("US BANK"), in its capacity as purported assignee of Plaintiffs' Deed of Trust, collectively "Defendants", who plead as follows:

## I.     STATEMENT OF THE CASE

1.     Plaintiff, MICHAEL YOUNESSI alleges Defendants are third-party strangers to his mortgage loan and have no ownership interest entitling them to collect payment or declare a default. By hiding behind the complexities of the mortgage finance system, Defendants brazenly attempt to dupe Plaintiff (and millions of other American homeowners) into believing they have the right to collect on a debt in which US BANK has no ownership interest.  In an attempt to further their fraudulent scheme and create the **air of propriety surrounding their debt collection efforts, Defendants have resorted to "papering the file" by fabricating a "Corporation Assignment of Deed of Trust," employing individuals who have no authority or personal knowledge of the facts to which they attest, and falsely representing to Plaintiff and *to the Court* they have the right to take Plaintiffs' Property away.** Not only is Defendants' conduct a *criminal violation* of California's Mortgage Fraud Statute, *Cal. Penal Code Section* 532(f)(a)(4)[1], and an affront to long-standing property laws, but their reliance on fabricated and forged documents undermines the  integrity of the judicial system. Through this action, Plaintiff seeks to stop Defendants' fraudulent practices,

---

[1] *Cal. Penal Code*  section 532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following....(4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."

discover the true holder in due course of his Promissory Note ("Note"), and determine the status of Defendants' claims.

## II.   JUSRISDICTION, VENUE AND PARTIES

1.     This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 13433, 2201, 2202, 12 U.S.C. § 2605, 15 U.S.C. § 1692; and 42 U.S.C. § 1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.[2]

2.     This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. §1367.

3.     This Court has original jurisdiction over the claims in this action based on 28 U.S.C. § 1332 which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00.

4.     The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Central District of California and involved real property located in the Central District of California.  Therefore, venue properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

5.     Plaintiff, MICHAEL YOUNESSI, is now, and at all times mentioned herein, an individual residing in the County of Orange.

---

[2] The Ninth Circuit instructs that in actions brought under 28 U.S.C.§ 2201, district courts must first determine whether there is actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co.*, 36 U.S. 491 (1942). The *Brillhart* factors require the Court to (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation. *Brillhart*, 316 U.S. at 495; see also *Schafer v. Citimortgage* No. CV 11-03919, 2011 WL 2437267 (C.D. Cal. June 15, 2011).   As held by the court in *Schafer*, this action does not involve a needless determination of state law issues, does not involve forum shopping, and is not duplicative litigation.

-3-

6.     Plaintiff, PACIFICA HOLDINGS, LLC, is a California limited liability company with its principal place of business, at all times mentioned herein, in the County of Orange, State of California.  PACIFICA has been vested in the Subject Property by the recording of a Quitclaim Deed by MICHAEL YOUNESSI on October 11, 2011 with the Orange County Recorder's Office.

7.     At all times relevant to this action, Plaintiffs were and are the owners and holders of legal title to the real Property commonly known as 1611 Cliff Drive, Newport Beach, California, Orange County, State of California (the "Property") and more aptly described as APN 049-221-08, Lot 3 in Block "A" of Tract No. 1219, Cliff Haven, in the City of Newport Beach, County of Orange, California as per Map recorded in Book 38, Page(s) 26 & 27, of Miscellaneous Maps in the Office of the County Recorder of said County.

8.     Lender Doe Defunct Defendant, Washington Mutual Bank, F.S.B., (hereinafter "WAMU"), was the original lender, however, is apparently defunct.

9.     Defendant, J. P. MORGAN CHASE , N.A., a Delaware Corporation, hereinafter referred to as "CHASE" is registered with the California Secretary of State with its principal place of business located at 270 Park Avenue, New York, New York.  At all times "CHASE" purported to have authority to do business in Orange County, California, and conducted business in Orange County on a regular basis.

10.     Defendant, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA4 TRUST, ("US BANK"), is a National Association organized under the laws of the United States with its principal place of business in Ohio.  Plaintiffs are informed and believe the WAMU Mortgage Pass-Through trust is organized under the laws of the State of New York and is domiciled in the State of New York.

///

-4-

11.    Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 - 100 INCLUSIVE and, therefore, sue these Defendants by such fictitious names.   Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.   Plaintiffs are informed and believe and based thereon allege, each of the fictitiously named Defendants are responsible in some manner for the injuries to Plaintiffs alleged herein, and that such injuries, as herein alleged, were proximately caused by such Defendants.

12.    Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

13.    Any allegation about acts of any corporate or other business Defendant means the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

14.    At all relevant times, each Defendant committed the acts, caused or directed others to commit the acts, or permitted other to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent of other Defendants and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

15.    At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint.  Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts.  Each Defendant intended and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

///

## III.   **INTRODUCTION**

16.     During the Mortgage Boom Era of 2002 to 2007, Wall Street investors looked to feed their insatiable and reckless greed for profit by tapping directly into the American Dream – home ownership.  Mortgage lenders and investment banks aggressively lured the American people into predatory loans with teaser interest rates and into purchasing homes with inflated appraisals and under the promise that the booming real estate market would continue to boom.  Wall Street took the soon to be toxic loans and bundled them into "Mortgage Backed Securities" through a process known as "Securitization."  These "securities" were then sold to investors in the form of certificates, whereby the investors became the "Certificateholders" of the securities that were to be fed by the toxic loans.

17.     Knowing that the predatory loans would soon default and turn into toxic assets, Wall Street placed their bets accordingly and bought exotic insurance products in the form of Credit Default Swaps. [3]  Thus, when the Mortgage Boom turned into a Mortgage Meltdown (which it did), they would stand to make even more profit when the mortgage insurance paid them out for their "losses."

---

[3]   In 1995, JPMorgan created the Credit Default Swap (CDS).  Essentially, a CDS is a form of insurance intended to protect the buyer of the policy in case the borrower defaults on the loan.  If the borrower defaults, the buyer of the CDS receives a large payout for the cash value of the defaulted loan.  The main difference between a traditional insurance policy and a CDS is that anyone can purchase a CDS, even those who have no direct "insurable interest" in the lender.  CDSs were instrumental during the housing bubble because once the banks ran out of creditworthy borrowers, they had to turn to uncreditworthy "subprime" borrowers.  To avoid losses from default, the banks moved these risky mortgages off their books by bundling them into "securities" and selling them to investors.   To induce investors to buy these securities, the securities were then "insured" with credit default swaps.  CDSs allowed investors to bet against the average American to default on their mortgage with little risk.  CDS insurance was especially attractive to investors who had knowledge of the subprime mortgage industry, since they knew the likelihood of default on those loans was much higher.  Notably, AIG Insurance Company ("AIG"), an insurance carrier who owned a considerable market share of these CDS policies, was unable to make good on these policies after   the housing bubble burst resulting in AIG seeking a government bailout. See Justin Fox, *Why the Government Wouldn't Let AIG Fail?* TIME Business (September 16, 2008) http://www.time.com/time/business/article/0,8599,1841699,00.html.  Thus, in the end, it was the American taxpayer who bore the burden of these CDSs.

18.     However, in their rush to "securitize" the predatory loans, Wall Street failed to actually follow its own rules and regulations, creating the instant situation where the securities are not actually backed by any mortgages at all.  Under the standard model, the promissory notes were *supposed* to be sold and transferred into a trust pool ("Securitized Trust") that holds the promissory notes as collateral on the securities bought by investors ("Certificateholders").  These "true sales" allow the original lenders to move the notes off their books, eliminating the need to maintain capital-adequacy reserves against default.  The purpose of securitizing collateral debt obligations was to provide a large supply of money to lenders for originating loans, and to provide investment to bond holders – which were expected to be relatively safe.

19.     The Securitized Trusts, if ever formed properly, are subject to and governed by (1) the Pooling and Servicing Agreement; (2) the Mortgage and Loan Agreement; (3) the 424B5 Prospectus; (4) the common law trust rules of Delaware or New York, depending on its origin, and (5) Internal Revenue Code section 860A through 860G, better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

20.     An essential aspect of the mortgage securitization process is that the Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering.  This is necessary in order for the Trustee of the purportedly Securitized Trust to be legally entitled to enforce the mortgage loans in case of default.  In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan must be validly transferred to the Trust as part of the securitization process – the promissory note and the security instrument (deed of trust or mortgage).  In this case, on information and belief, neither document was validly transferred.

21.     Here, Plaintiff alleges the "true sales" never took place due to the failure to follow the basic legal requirements for the transfer of a negotiable instrument and thereby, US BANK did not acquire any legal, equitable, and pecuniary interest in Plaintiff's credit or, has no secured or unsecured right, title, or interest in Plaintiff's Note and Mortgage, and thus, no right to collect mortgage payments, demand mortgage payments, or report derogatorily against Plaintiff's credit.[4]

21.     Plaintiff further alleges that, on information and belief, the WAMU MORTGAGE PASS-THROUGH TRUST (hereinafter "WAMU TRUST") that claims to own Plaintiff's Note and Mortgage has been dissolved due to the disbursement and receipt of mortgage insurance payouts to US BANK and the Certificateholders (including, but not limited to, Credit Default Swaps and other mortgage insurance products). As a result of these mortgage insurance payouts, US BANK has been paid in full on Plaintiff's debt obligation.

22.     Nonetheless, US BANK attempts to take advantage of the complex structured finance system to defraud yet another homeowner. Plaintiff anticipates that US BANK will seek a Court-sanctioned bailout by submitting a blatantly fabricated "Assignment" via a Request for Judicial Notice, thereby committing fraud on the Court, and attempting to further mislead Plaintiff into believing that US BANK is his actual creditor, and is entitled to enforce his obligation.

---

[4] Plaintiff's allegations are supported by the recent ruling of the Massachusetts Supreme Judicial Court in *U.S. Bank vs. Ibanez*, SJC-10694, 2011 WL 38071. In *Ibanez*, the court invalidated two foreclosure sales, finding that the lower court did not err in concluding that the securitization documents submitted by U.S. Bank and Wells Fargo failed to demonstrate that they were the holders of the mortgages. The court rejected the banks' argument that the mortgages were transferred via the applicable Pooling and Servicing Agreement and made clear that, to foreclose, the banks must prove a complete and unbroken chain of title from origination to securitization trust in full compliance of the PSA, i.e. establish ownership of the mortgage.

-8-

23.     Plaintiff does not dispute that he owes money on his mortgage obligation.[5]   Rather, Plaintiff disputes the amount owed, and seeks the Court's assistance in determining who the holder in due course is of his Note and Deed of Trust, and specifically what rights, if any, US BANK has to claim a secured or unsecured interest in Plaintiff's Note or Mortgage.

24.     Plaintiff's information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct written and oral communication with Defendants; (3) his counsel's research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, and publicly available securitization documents and practices; (4) a review of purported "Corporation Assignment of Deed of Trust" signed by "Beverly Brooks"; and (5) an audit of US BANK's filings with the Securities and Exchange Commission ("SEC"), including US BANK's Prospectus and the Pooling and Servicing Agreement ("PSA").

25.     On or about about April 2, 2007, Plaintiff YOUNESSI, obtained a 30-year, Adjustable Rate, Negative Amortization loan funded by Doe Defunct Defendant Lender "WAMU" in the amount of $1,207,500.00. Mortgage Electronics Registration Systems, Inc., (hereinafter "MERS"), was named as the Beneficiary on the Deed of Trust.

26.     Plaintiff alleges and believes thereon that on or around the time of origination of his loan, "WAMU" attempted to securitize and sell his loan to another entity or entities. **That entity was *not* US BANK or the WAMU TRUST.**

---

[5] However, simply because Plaintiff does not dispute this fact, the Court should not condone US BANK and BOFA's fraudulent and predatory mortgage servicing practices and allow them to collect on money they were not owed.  Simply put, the Court should not allow US BANK or BOFA to trample over 200 years worth of well-settled property laws just because Plaintiff "owes somebody the money".

27.   Plaintiff alleges on information and belief that CHASE never sold, transferred, or granted his Note or Mortgage to the Sponsor, Depositor, or US BANK and that US BANK is merely a third-party stranger to the loan transaction. Furthermore, Plaintiff alleges that none of the Defendants or Doe Defendants can demonstrate or document that Plaintiff's Note was ever properly endorsed, and transferred to US BANK.  In fact, Plaintiff has requested that CHASE verify and validate his debt.  Although this information should be readily available to any mortgage servicer, CHASE has failed to provide any evidence to verify the owner and amount of Plaintiff's Mortgage or validate the claim to Plaintiff's debt obligation.

28.   The parties involved in the alleged Securitization and transfer of Plaintiff's Note and Mortgage failed to adhere to section 2.01 of the PSA, which requires that Plaintiff's Note and Mortgage to be properly endorsed, transferred, accepted, and deposited with Securitized Trust (or its custodian) on or before the "closing date" indicated on the Prospectus. The "closing date" is the date by which all of the Notes and Mortgages must be transferred into the WAMU Trust.  The failure to do so results in the Note and Mortgage not being part of the WAMU Trust res, such that it is not a loan that either WAMU or CHASE can attempt to collect on.

29.   On or about August 8, 2012, "Colleen Irby", purportedly a "Vice President" for CHASE allegedly executed a document purporting to be a "Corporation Assignment of Deed of Trust" ("Assignment"), in which he/she intentionally misrepresented to Plaintiff in writing that US BANK had acquired an interest in his Note and Mortgage, and that CHASE had endorsed, transferred, and negotiated his Note to US BANK. In fact, no such transfer of interest took place, a fact that "Colleen Irby", US BANK and CHASE were aware of.  See **EXHIBIT "A"**, attached hereto is a true and correct copy of the Assignment, executed on

August 8, 2012.  Plaintiff specifically disputes the contents and authenticity of this document.

30.    Plaintiff alleges the only recorded "Assignment" was executed after the closing date of the trust.  The dubious "Assignment" raises numerous red flags and further demonstrates Plaintiff's Note and Mortgage were not deposited into the Trust by the closing date, and the "Assignment" was fabricated in attempt to "paper over" the fatal securitization defects.

31.    The failure to deposit Plaintiff's Note into the CHASE Funding Trust before the closing date is a violation of the PSA and of New York trust law.  Consequently, the WAMU TRUST cannot claim any legal or equitable right, title, or interest in Plaintiff's Note and Mortgage since US BANK cannot take any action which is not authorized by the Securitization agreements that created and govern the WAMU TRUST.

32.    Plaintiff does not allege or assert that he is a beneficiary or party to the PSA.   Rather, Plaintiff alleges that the failure to securitize his Note makes it impossible for US BANK, the WAMU TRUST, and/or CHASE to claim, allege or assert that it was assigned, transferred or granted Plaintiff's Note or Mortgage, or any interest therein, in any matter whatsoever.  Plaintiff also alleges that the failure to securitize his Note and Mortgage has resulted in an unperfected lien that Defendants cannot enforce in any manner whatsoever. [6]

---

[6] These allegations are identical to those brought by the Nevada Attorney General against Bank of America, BAC Home Loans Servicing and Recontrust, in which Attorney General Catherine Cortez Masto alleges that these entities engaged in unlawful and deceptive practices by misrepresenting to homeowners that they had authority to foreclose despite the fact that there were fatal deficiencies in transfers to the securitization Trusts. *State of Nevada vs. Bank of America, et al.*, No. 3:11-cv-00135-RCJ, (C.D. Nev August 30, 2011). The AG concludes that, "[t]hese are not mere technicalities.   The PSA's spelled out specific procedures in order to ensure a proper transfer, protect the Trusts as the holders in due course, and avoid subjecting the Trusts to taxation.  In addition, borrowers need to know the actual holders of their mortgages so that, for example, they can investigate and assert available defenses in foreclosures, including that the agent of the trustee lacks authority or standing under the Note" *Id.* at ¶ 146.

33.     Plaintiff relied on US BANK and/or CHASE's misrepresentations and has been damaged in the following ways: (1) multiple parties may seek to enforce his debt obligation against him; (2) the title to his home has been clouded and rendered unmarketable, as any would-be buyer of Plaintiff's home will find themselves in legal limbo, unable to know with any certainty whether they can safely buy Plaintiff's home or get title insurance; (3) he has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) he is unable to determine whether he sent his monthly mortgage payments to the right party; and (5) he has expended significant funds to cover the cost of attorney's fees and related costs.

34.     In addition to seeking compensatory, consequential, punitive, and other damages, Plaintiff seeks Declaratory Relief as to whether the Deed of Trust (Mortgage) secures any obligation of Plaintiff in favor of US BANK or CHASE, such that either of them can collect Plaintiff's mortgage payments, demand payment or engage in debt collection activities.

## IV.   STATEMENT OF FACTS

35.     Defendants and each of them, and their agents, officers, employees, and affiliated or associated parties have engaged in and continue to engage in a pattern of unlawful or unfair predatory real estate lending practices causing victims of their actions, including Plaintiffs herein, to potentially lose its Property through the foreclosure process because of predatory lending practices on the part of Defendants that consist of, but not limited to (a) failing to provide proper disclosures as required by state law, (b) failing to disclose the true terms of the loan, (c) falsifying loan documentation to inflate, and actually create the  income of prospective borrowers; (d) charging excessive closing cost fees to Plaintiff, YOUNESSI, that have no reasonable value basis to the services actually performed by Defendants; (e) misleading Plaintiff with regards to a loan modification; and (f) failing to comply

with California State laws as they govern foreclosure procedures on real property situated within the State of California.

36.    Plaintiffs are informed and believe that Lender Defendants are financial institutions that were paid a fee to pose as a residential mortgage lender, when in fact the actual lender and underwriter were other parties whose identities and receipt of fees and profits were withheld from Plaintiff, YOUNESSI, at loan closing.

37.    On or about April 2, 2007, Plaintiff, YOUNESSI, obtained a 30-year, Adjustable Rate, Negative Amortization loan funded by Doe Defunct Defendant Lender "WAMU" in the amount of $1,207,500.00. During the negotiation process, Plaintiff contacted said lender at its office located at Irvine, California, by and through its employees/agents/wholesale mortgage correspondents, all who acted within the course and scope of their duties and with the full consent and authority to do so given by "WAMU", to obtain information concerning purchase loan financing for the Subject Property. Plaintiff engaged the services of said lender to obtain a loan, and in so doing, entered in good faith, into a written contract with lender.

38.    Agents/employees of "WAMU", all acting within the course and scope of their duties and with the full consent and authority to do so, given by WAMU, had Plaintiff sign a blank loan application.  Those same agents/employees of "WAMU" then filled out the loan application for Plaintiff and in so doing attributed to Plaintiff's substantially inflated income.  The agents/employees of "WAMU" falsified Plaintiff's income deliberately, purposefully, with the express intent to deceive and without Plaintiff's knowledge or consent.   Defendants then processed the loan with this falsified income.  "WAMU" then funded the loan using their "Stated Income/Quick Qualifier" underwriting standards which was a sham and a farce. Needless to say, all government, and particularly FHA loans are full income documentation loans only. Plaintiff's actual income was never used during their funding and underwriting process. Defendants did have Plaintiff sign an IRS 4506-T Verification of Tax Transcripts form, so they knew Plaintiff's real income.  This

practice caused the demise of many a lender in the country.  Unknown to Plaintiff, Defendant and its employees/agents, induced the Plaintiff into a transaction that did not and could not meet normal underwriting standards for a residential mortgage. When a true analysis of the income verses the amount of the loan was conducted, it was discovered that Lender Defendants knew Plaintiff would never have qualified for the loan using his true income.  Therefore, Lender Defendants, in a further conspiracy each with each other, created false income and had Plaintiff sign a blank 1003 residential loan application using such fabricated income, that they later inserted into the application, and "approved" Plaintiff for this predatory loan that actually left Plaintiff with *negative* income each month. Lender Defendants posed as conventional mortgage lenders thus leading Plaintiff to reasonably believe Lender Defendants had an interest in the success (repayment of the loan) of the transaction that Plaintiff was induced to believe was being executed at the time of the "closing" of the transaction.

39.    In fact, lender and the trustee on the Deed of Trust had no financial stake (i.e., liability) in the transaction and no interest other than obtaining Plaintiff's signature on the loan that could ever be repaid, contrary to representations and assurances from the conspiring participants in this scheme. The original note was for $1,207,500.  There was no "lender" involved in the closing in the sense of an entity performing due diligence and evaluation pursuant to national standards for underwriting and evaluating risk of loaning money in a residential loan closing. Their purpose was solely to collect fees, rebates, kickbacks and profits that were never disclosed to Plaintiff and have only recently been discovered by the Plaintiff through consultation with experts in securitization of residential mortgage loans, and diligent research including the filings of some parties with the Securities and Exchange Commission which disclose the normal manner of operating this scheme.

40.    In or around February 2009, Plaintiff sought assistance with modifying his mortgage from various mortgage loan counseling services.  These services are

experts in securitization of residential mortgage loans.  Through an audit of Plaintiff's mortgage and diligent research into the filings of some parties with the Securities and Exchange Commission, it was discovered Plaintiff was charged excessive fees, including a "Yield Premium Spread".  Further, it was discovered the Defendants had engaged in the aforementioned scheme to collect fees, rebates, kickbacks and profits, at the expense of Plaintiff.  Plaintiff was previously unaware of these problems because employees of Defendants had told him otherwise, or failed to disclose this information to Plaintiff.  Further, Plaintiff was not in a position to know this information as employees of Defendants were in a position to control all information given to Plaintiff and when Plaintiff asked questions, employees of the Defendants either misled or simply omitted the actual facts.

41.    Through continuous research into the securitization of Plaintiff's mortgage, in an effort to determine the actual legal holder of Plaintiff's mortgage obligation, Plaintiff has further discovered Defendants have never transferred Plaintiff's mortgage to the WAMU TRUST, of which "US BANK" purports to be the Trustee, as required by the Pooling Service Agreement, the "PSA" set up by Defendants and which purported to contain Plaintiff's mortgage.  As a result US BANK has no actual legal interest in Plaintiff's mortgage obligation.

42.    Plaintiff relied upon the training and expertise of professionals who know the real estate products currently being offered by banks and other lending institutions to offer the best loans for individuals, based upon their particular circumstances.

43.    Plaintiff relied upon the superior knowledge, training and expertise of "WAMU'S" agents/employees who repeatedly held themselves out to be experts in the real estate loan products offered by banks and other lending institutions, to offer the best loan for Plaintiff, based upon Plaintiff's particular circumstances.

44.    Plaintiff was offered this loan which was doomed for foreclosure from the very beginning.

45.   While the terms of the loan was discussed verbally with the Plaintiff, the loan documents themselves were never explained as he was rushed into signing the final documents, and he relied upon the assurances of Defendants that the terms set forth in the documents mirrored the verbal discussions conducted concerning the specific terms of the loan. They did not.

46.   The language which Defendants used in the promissory note was incomprehensible, filled legalese and filled with unintelligible language, all designed to confuse the average borrower, such as Plaintiff in order to obscure his rights and the unconscionableness of the contract.  It was designed to insure that average homeowners, such as the Plaintiff, did not comprehend the true nature of the agreement and the extraordinary costs that it contained.  As a result, Plaintiff relied upon the agents of Defendants and all the Loan Disclosures.

47.   As previously stated, the Plaintiff's loan was as a result of Defendants obtaining a stated income only.   Said Defendants then purposely deceived the Plaintiff by telling him he could afford this loan.  These are facts which Defendants, through their agents/employees, conspired to conceal and attempted to conceal from Plaintiff.  Plaintiff believed he could afford the amounts and that he would be able to liquidate or extinguish the Promissory Note by the date stated in the Promissory Note.  Plaintiff further believed that the payments during the first portion of the repayment schedule would further accomplish this.  Combined with the falling real estate values, it further made it totally 100% impossible to get out of a situation that he had been coerced, and tricked into.

48.   Defendants prepared and tendered to Plaintiff, along with the other loan documents it prepared and tendered, a Deed of Trust (the "Deed") in the amount of $1,207,500.00 in which Defendant "WAMU" was listed as the lender.

49.   The mortgage payments due on this loan extended to Plaintiff continue to pose a hardship.  Plaintiff began attempting to again refinance or modify the loan terms.  All attempts to discuss this issue with Defendants were rejected or ignored.

Plaintiffs want to keep this Property and YOUNESSI doesn't understand, since he does qualify for a loan modification, why wouldn't Defendants consider a permanent loan restructure on this Property. Some of the answers Defendants have given the Plaintiff for their rationale in doing this and declining his permanent loan modification is ludicrous. After receiving billions of dollars of the financial bailout money from the US Government, it would seem like they would be more interested in providing assistance on troubled loans to the homeowners, especially ones like this, and where the homeowner have "clearly demonstrated capability and responsibility."

50.    Plaintiffs are informed and believe, and allege thereon, "CHASE" acquired or merged with "WAMU" in or around June 2008, and apparently took over the loan from "WAMU", and, therefore, incurs all such liability for "WAMU" as to the allegations in this Complaint.

51.    Under California law, successor liability may be imposed on a corporation for the debts and liabilities of its predecessor in any of the following circumstances: (1) the purchaser expressly or impliedly agrees to such assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is entered into to escape liability for debts. *Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28, 136 Cal.Rptr. 574;*Westoil Terminals Co. V. Harbor Ins. Co.* (1999) 73 Cal.App.4th 634, 638;*Franklin v. USX Corp.* (2001) 87 Cal.App.4th 615, 620, 105 Cal.Rptr.2d 11.

52.    "It is the general rule that a corporation formed by consolidation or merger is answerable for all the debts and liabilities of the constituent corporations, whether they arise ex contractu or ex delicto." *Moe v. Transamerica Title Ins. Co.* (1971) 21 Cal.App.3d 289, 304. Once the merged entity holds the liabilities of its predecessor, it is axiomatic that it cannot extinguish through contracts with one party debts or obligations it owes to a third party who is a stranger to the contract.

53.  "CHASE" and/or "US BANK" claim to be the successors-in-interest to "WAMU" and, therefore, incur all such liability for "WAMU" as to the allegations in this Complaint.

54.  On August 9, 2012, "CHASE" initiated non-judicial foreclosure proceedings against the Property and recorded, or caused to be recorded, a Notice of Default and subsequently a Notice of Trustee's Sale.  Also on August 9, 2012, a "Beverly Brooks", purporting to act as a "Vice President" of "CHASE" executed a Corporation Assignment of Deed of Trust purportedly transferring all beneficial interest in the Property to Defendant "US BANK".  Defendants have scheduled a trustee sale for December 7, 2012, while this action is pending.

55.  If the foreclosure is allowed to take place, it will be unlawful for myriad reasons, as a matter of law, and Plaintiffs will seek to set aside the foreclosure.

## V.  THE FABRICATED ASSIGNMENT OF DEED OF TRUST IS A FRAUDULENT LIEN THAT CONVEYED NO INTEREST TO US BANK

56.  On August 9, 2012, US BANK and/or CHASE caused the Assignment to be recorded with the County of Orange.  The Assignment alleged that for "value received" CHASE granted, assigned, and transferred to US BANK all beneficial interest in the Deed of Trust.  The Assignment was purportedly signed by "Colleen Irby " as the "Vice President" of CHASE.  Plaintiff alleges that no such transfer ever occurred, and "Colleen Irby" is not a "Vice President" of CHASE.

57.  Plaintiff alleges "Colleen Irby" is an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.[7]

---

[7] A recent "60 Minutes" television news segment reported on the epidemic of "phony" and "forged" documents used to evict homeowners, including the various different and forged signatures of "Linda Green" added to thousands of foreclosure documents filed in foreclosure proceedings all over the Country, available at http://www.youtube.com/watch?v=UdeFvPC5MN1. Ms. Green was interviewed by "60 Minutes" and admitted that her signature was forged by many

-18-

58.    In fact, "Colleen Irby" is not even an employee of CHASE, but rather is a Section Manager for California Reconveyance, the foreclosing trustee. Thus, the Assignment was fraudulently executed without CHASE's knowledge or authorization.

59.    "Colleen Irby" was never, in any manner whatsoever, appointed as a "Vice President" by the Board of Directors of CHASE, as required by CHASE's corporate by-laws and an adopted corporate resolution by the Board of Directors of CHASE. For that reason, "Colleen Irby" never had, nor has, any corporate or legal authority from CHASE, or the lender's successors and assigns, to execute the purported "Assignment." [8] This was an intentional act undertaken by US BANK and/or CHASE, done knowingly with the specific intent that the consequences of their actions be brought to fruition, which they have as evidenced by the instant debt collection activities.

60.    The "Assignment" is a fraudulent lien claim, and the execution, filing, and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection of Plaintiff's mortgage payments, as well as engaging in other debt collection activities.

61.    Plaintiff further alleges any amount allegedly owed under the Note is subject to equitable offset by the actual, consequential, special, and punitive

---

DocX employees who were paid only $10 an hour and required to forge 4,000 documents a day. These individuals are now known as "robo-signers".

---

[8] The instant case is analogous to *Kingman Holdings, LLC v. Citimortgage, Inc. and Mortgage Electronic Registration Systems, Inc.*, WL 1883829 (E.D. Tex. 2011) ("*Kingman*"), where the court denied a motion to dismiss with similar causes of action as those that are pled here on the basis that the plaintiff had adequately challenged the signatory's alleged title as "Vice President" of MERS. The *Kingman* court held that the plaintiff had adequately pled that the assignment executed by Nate Blackstun as "Vice President" on behalf of MERS, was void because Blackstun was not actually appointed by MERS to be its Vice President.

VERIFIED COMPLAINT FOR DAMAGES, EQUITABLE RELIEF

damages owed to Plaintiff from Defendants, which amount is currently unknown, but will be determined upon conducting discovery.  Plaintiff believes this amount will be in excess of the amount of his obligation.

62.   Attempting to "assign' or transfer a Deed of Trust by itself, as Defendants did here, does not allow enforcement of Plaintiff's Note and Mortgage. As alleged herein, Plaintiff's Note was not properly negotiated, endorsed, and transferred US BANK who seek to cause its purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

63.   *California Commercial Code* section 3301 limits a negotiable instrument's enforcement to the following:

> "Person entitled to enforce" an Instrument means (a) the
> holder of the instrument, (b) a nonholder in possession of
> the instrument who has the rights of a holder, or (c) a person
> not in possession of the instrument who is entitled to enforce
> subdivision (d) of Section 3418.  A person may be a person
> entitled to enforce the instrument even though the person is
> not the owner of the instrument or is in the wrongful possession
> of the instrument.

64.   On information and belief, none of the Defendants were/are present holders in due course of Plaintiff's Note such that they can enforce Plaintiff's obligation and demand mortgage payments.

65.   On information and belief, Defendants were not, and are not, a nonholder in possession of Plaintiff's Note who has rights of the holder.

66.   If there is a holder in due course of Plaintiff's Note at issue, pursuant to *California Commercial Code* section 3301, et seq. and/or the PSA, it is the entity

///

-20-

that can establish a pecuniary, legal, and equitable interest in the Property, and provide an unbroken chain of title to Plaintiff's Note and Mortgage.[9]

67.     On information and belief, none of the Defendants were/are entitled to enforce Plaintiff's Note pursuant to § 3309 or subdivision (d) of § 3418.

68.     Plaintiff alleges that, prior to demanding mortgage payments from Plaintiff, none of the Defendants or Doe Defendants had, nor presently have, a secured or unsecured legal, equitable, or pecuniary interest in Plaintiff's Note and/or Deed of Trust as required under California law – irrespective of who is actually in physical possession of Plaintiff's Note.

69.     Plaintiff alleges that, on information and belief, US BANK, CHASE and/or its agents are fraudulently enforcing a debt obligation in which they have no pecuniary, equitable or legal interest.  Thus, US BANK's and CHASE's conduct is part of a fraudulent debt collection scheme.

///

---

[9] The testimony of Linda DeMartini, a 10-year litigation manager for Countrywide, in *In Re Kemp.*, Case No. 08-18700-JHW, (Bankr.. D. N.J. November 16, 2010) (for publication) exposed the shoddy handling of mortgage notes and deeds of trust of securitized mortgages required to perfect "holder in due course" status.  In that case, Linda DeMartini described how Countrywide failed to adhere to the most rudimentary of securitization procedures, such as transferring the original promissory note to the trusts that had purchased the loans, as required under the pooling and servicing agreement.  Ms. DeMartini testified that it was standard practice for Countrywide to warehouse the original mortgage notes, which were stored in Simi Valley, California, despite securitization contracts that required the notes to be physically transferred to sponsors, trustees or custodians of the securitized trusts.  The findings in court decisions all over the Country, news stories, attorneys generals' complaints, and state and federal investigations reveal that business practices like Countrywide's were common place and like Countrywide, most lenders failed to properly comply with protocols required to properly securitize mortgage loans.  Ms. DeMartini's testimony has been corroborated by Abigail Field of CNN, who reviewed foreclosures filed in two New York counties between 2006 and 2010 in which Bank of New York was foreclosing on behalf of a Countrywide securitization trust and found that none of the 104 loans that were examined were endorsed by Countrywide: "..If the lack of endorsement on these notes is typical – and 104 out of 104 suggests it is – the problem occurs across Countrywide securities."  See Abigail Field, *At Bank of America. More Incomplete Mortgage Docs Raise More Questions*, Fort.. (June 3, 2011), http://finance.fortune.cnn.com/2011/06/03/at-bank-of/america-more-incomplete_-mortgage-docs-and-more-questions/.

## VI.  PLAINTIFF'S LOAN MODIFICATION AND DEBT VALIDATION EFFORTS

70.   In or about 2009, Plaintiff hired a third party to help him obtain a loan modification.  No action was taken by the lender.

71.   In or about 2011, Plaintiff hired another third party to help him obtain a loan modification but once again, lender did not take any action.

72.   Plaintiff was never offered a loan modification.

73.   In an effort to verify and validate his debt, Plaintiff sent a Qualified Written Request letter on or around  May 25, 2012, pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e), in which he requested that the purported servicer (CHASE) provide, among other things, "The name, address, name of a contact person and telephone number of the current holder in due course and owner of the mortgage note."  12 U.S.C. § 2605(e) requires that the servicer provide this information and respond to a written request within 60 days of receipt.

## VII.  PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER, SIGNIFICANT MONETARY, LEGAL, AND EQUITABLE DAMAGES

74.   The conduct described above by US BANK and CHASE was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage.  However, despite such knowledge, said Defendants continued to demand and collect Plaintiff's mortgage payments.

75.   Defendants engaged and are engaging in a pattern and practice of defrauding Plaintiff, in that, on information and belief, during the entire life of the mortgage loan, Defendants failed to properly credit payments made, incorrectly calculated interest on the accounts, and failed to accurately debit fees.

76.   On information and belief, at all times material, US BANK and CHASE  had and have actual knowledge that Plaintiff's accounts were not accurate,

///

but that the Plaintiff would continue to make further payments based on Defendant's inaccurate accounts.

77.    On information and belief, Plaintiff made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiff's accounts.

78.    As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff overpaid in interest.

79.    As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff's credit and credit score have been severely damaged. Specifically, because of the derogatory credit reporting on his credit report by US BANK and/or CHASE, Plaintiff is unable to refinance out his present loan, buy another property or sell his home.

80.    As a direct and proximate result of the actions of the Defendants set forth above, the title to the Plaintiffs' home has been slandered, clouded, and its salability has been rendered unmarketable.

81.    As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff does not know who the current beneficiary of his Note and Mortgage actually is, such that he is now subject to double financial jeopardy.

82.    As a direct and proximate result of the actions of the Defendants set forth above, *multiple* parties can attempt to enforce Plaintiff's debt obligation.

83.    The conduct of US BANK, CHASE and one or more of the Doe Defendants has led to the imminent loss of Plaintiffs' home and to pecuniary damages.  The pecuniary damages include, but are not limited to, the costs of over-calculation and overpayment of interest, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, the costs associated with removing the cloud from his Property title and attorneys' fees, in an amount to be proven at trial.

84.    The conduct of US BANK, CHASE, and one or more of the Doe Defendants' was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiff's Note and Deed of Trust, yet they intentionally and fraudulently covered up this defect by wrongfully recording a fraudulent Assignment, which would enable them to ***illegally and fraudulently*** collect on Plaintiff's debt, and which in essence has rendered the title to the Property unmarketable.

85.    The title to Plaintiff's Property has been rendered unmarketable and unsalable because of the possibility of multiple claims being made against Plaintiff's debt and underlying security (the Subject Property). If the Assignment of Deed of Trust is not cancelled and set aside, Plaintiff will be incurably prejudiced. Plaintiff will be denied the opportunity to identify and negotiate with his ***true creditor*** and exercise his right to verify and validate his debt.

86.    Plaintiff has offered to and is ready, willing, and able to unconditionally tender his obligation. [10]

///

///

///

---

[10] Case law makes clear that Plaintiff is only required to allege a credible offer of tender, not actually tender. *Alicia v. GE Money Bank*, No. C 09-00091 SBA, 2009 WL 2136969 at *3 (N.D. Cal. July 16, 2009) ("…debtor must allege a credible tender of the amount of the secured debt…"). Moreover, tender is not required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage Electronic Registration Systems, Inc.*, No. CV 11-1658 AHM, 2011 WL 2533029 (C.D. Cal. June 24, 2011), at *16 (emphasis added) (citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997); *Stockton v. Newman*, 148 Cal. App. 2d 558, 564 (1957). See also, *Foulkrod v. Wells Fargo Financial California Inc.*, No. CV 11-732-GHK (AJWx) (C.D. Cal. May 31, 2011) ("…requiring plaintiff to tender the amount due on his loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan.") In light of the fact that Plaintiff contests the legitimacy of the Defendants' claim to the mortgage payments, it would be illogical and inequitable to require Plaintiff to actually tender the amount given that Plaintiff disputes whether the Defendants have any rights under the loan. See *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

## FIRST CAUSE OF ACTION-DECLARATORY RELIEF:
## TO DETERMINE STATUS OF DEFENDANTS' CLAIMS
### [28 U.S.C. §§ 2201, 2202]
#### [Against All Defendants and Doe Defendants]

87.    Plaintiffs hereby incorporate by reference reach and every one of the preceding paragraphs as if the same were fully set forth herein.

88.    Section 2201(a) of Title 28 of the United States Code states:

In a case of actual controversy within its jurisdiction, except with a respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 5050 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

89.    Section 2202 of Title 28 of the United States Code states:

Further necessary or proper relief based on declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

90.    Plaintiff alleges that neither US BANK nor CHASE has a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of

VERIFIED COMPLAINT FOR DAMAGES, EQUITABLE RELIEF

Trust and that its purported assignment has no value since the Deed of Trust is wholly unsecured.

91.  On or about August 9, 2012, Defendants claim they secured an enforceable interest in, and perfected lien against, the Plaintiff's Note, Deed of Trust and Property.

92.  Thus, the competing allegations made by Plaintiff above establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.

93.  Accordingly, Plaintiff requests the Court make a finding and an issue appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiff's Note, Deed of Trust, or the Property which authorizes them, in fact, or as a matter of law, to collect Plaintiff's mortgage payments or enforce the terms of the Note or Deed of Trust in any matter whatsoever.

94.  Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiff will be denied the opportunity to identify his true and current creditor/lender and negotiate with them; (2) he will be denied the right to conduct discovery and have US BANK claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (3) he will be denied the opportunity to discover the true amount he still owes minus any illegal costs, fees and charges.

95.  Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether US BANK's claim against Plaintiff is enforceable and whether it is secured or unsecured by a right, title or interest in Plaintiff's Property.

96.   Furthermore, the conduct of US BANK and CHASE and one or more of the Doe Defendants, and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiff is, therefore, entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

## SECOND CASE OF ACTION

## VIOLATION OF 12 U.S.C. § 2605 (RESPA)

### [As Against J.P. Morgan Chase and one of more of the Doe Defendants]

97.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

98.   The Subject Loan is a federally regulated mortgage loan and is subject to the federal Real Estate Procedures Act (RESPA) and its implementing regulation, Regulation X.

99.   On or about May 25, 2012, Plaintiff sent a Qualified Written Request, ("QWR") via U.S. Post Certified Mail.

100.   Plaintiff believes CHASE has received the QWR.

101.   The QWR contained information to enable CHASE to identify Plaintiff's loan and also contained requests for information of the loan, specifically the identity and contact information of the holder in due course of Plaintiff's Note, accumulated late fees and charges, and requested information to verify the validity of the purported debt owed to US BANK and CHASE.

102.   CHASE did not provide the contact information for the purported holder of Plaintiff's Note, as required by § 2605, et seq.

103.   Because the Mortgage Loan is subject to RESPA and Regulation X, all Defendants were required to comply with Section 6 of RESPA appearing at 12 U.S.C. § 2605.  Defendants violated Section 6 or Regulation X upon receipt of

Plaintiff's QWR by their actions including, but not limited to: (a) failure to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of the correction; and (b) failure to protect Plaintiff's credit rating upon receipt of Plaintiff's QWR by furnishing adverse information regarding payment to credit reporting agencies as defined in § 603 of the Fair Credit Reporting Act, 15 U.S.C. § 1681(a).

104.   Thus, CHASE violated 12 U.S.C. § 2605 and is subject to statutory damages, civil liability, penalties, attorneys' fees and actual damages.   *See* 12 U.S.C. § 2605.  The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiff's loan, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, costs associated with removing the cloud on his Property title and setting aside the trustee's sale, and attorneys' fees and costs, in an amount to be proven at trial, but in excess of $75,000.00.

105.   As a direct and proximate result of the violations of RESPA and Regulation X by CHASE, Plaintiff has suffered actual pecuniary damages, including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

## FOR VIOLATION OF 15 U.S.C. § 1692, ET SEQ.

### [Against All Defendants and Doe Defendants]

106.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

107.   Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt…including the

false representation of…the character, amount, or legal status of any debt…and the threat to take any action that cannot legally be taken…"

108.   In illegally attempting to collect on Plaintiff's debt obligation in the manner described herein, Defendants US BANK, as the purported assignee, and BOA, as purported mortgage servicer:

(a)   falsely represented the status of debt, in particular, that it was due and owing to Defendant US BANK at the time the suit was filed;

(b)   falsely represented or implied that the debt was owing to Defendant US BANK as an innocent purchaser for value, when in fact, such an assignment had not been accomplished;

(c)   threatened to take action, namely engaging in collection activities that cannot legally be taken by them; and

(d)   attempted to collect on the promissory note under false pretenses; namely that US BANK was assigned Plaintiff's debt when in fact they were not.

## FOURTH CAUSE OF ACTION
## ACTUAL FRAUD (CAL. CIV. CODE §1572)
### [Against All Defendants and Doe Defendants]

109.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

110.   *California Civil Code* § 1572 states that fraud exists when any of the following acts and situations occur.   Actual fraud consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party:

> a.  The suggestion, as a fact, of that which is not true, by one who does not believe it to be true; second, the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true; third, the suppression of that

-29-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

which is true, by one having knowledge or belief of the fact; fourth, a promise made without having any intention of performing it; or any other act fitted to deceive.

111.   Plaintiff alleges Defendants are in direct violation of the code section cited above, in that each of them, or their agents or assigns, made representations to the Plaintiff regarding his ability to be able to pay the mortgage payment upon adjustment of the interest rate when it reset after a designated period of time. Plaintiff alleges each of the Defendants intentionally, maliciously and egregiously took and undue fraudulent advantage of the Plaintiff who they knew was in a financially distressed position and thus vulnerable to the types of misrepresentations made to him by Defendants, or their agents or assigns.  Plaintiff relied upon the superior knowledge and expertise of Defendants and their agents or assigns. Plaintiff relied upon the superior knowledge and expertise of Defendants and their agents or assigns and believed the representations made to them as to his ability to afford the mortgage payments upon adjustment, or his ability to refinance out of the mortgage if he could not afford the increased payments.

112.   Plaintiff alleges Defendants knew their statements to Plaintiff regarding Plaintiff's ability to make the adjusted mortgage payments, or to refinance out of the mortgage if was unable to make the adjusted payments, were false when they made them.   Defendants made the said false statements for the express purpose of inducing Plaintiff to become legally obligated to Defendants for mortgage loans based upon those false statements.   The facts and identities of the Defendant originators are known to all other Defendants, including the loan servicer and their affiliates, as they as they all retain the original loan documents and maintain computer based records of all the loan transactions at issue in this case.

113.   As a direct and foreseeable consequence of the acts of Defendants Plaintiff has been caused to suffer the loss of his home and equity, economic damages, severe emotional distress, and damage to his credit rating. In addition, the acts of Defendants are said to be intentional and committed with a conscious

disregard of the consequences of their acts or to the damages Plaintiff would suffer as a consequence of their actions and punitive damages are appropriate to punish the acts and deter such conduct by others.

## FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### [Against All Defendants and Doe Defendants]

114.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

115.   Although some of the Defendants may have reasonably believed some or all of the representations they made, as more fully set forth herein above, were true, none of them had reasonable grounds for believing such representations to be true at the time: (a) the representations were instructed to be made, as to those Defendants instructing others to make representations, or (b) at the time the representations were made, as to those Defendants making representations and those Defendants instructing others to make the representations, or (c) at the time the representations were otherwise ratified by the other Defendants.

116.   In so doing, Defendants were not only acting as mortgage loan brokers and selling agents, with respect to Plaintiff's loans, but as financial advisors.  In so doing, Defendants owed Plaintiff an affirmative duty to exercise due care in the performance of their respective fiduciary and contractual duties, including the duty to disclose and explain all material terms of the loan agreements.

117.   These affirmative duties also prohibit Defendants from making any misrepresentations to Plaintiff regarding the terms of or Plaintiff's ability to repay the loan.  As more fully described herein, the representations Defendants made to Plaintiffs were not true.

118.   Defendants intended Plaintiff to rely upon those misrepresentations.

119.   As   described   herein,   Plaintiff   reasonably   relied   on   those representations.

120.   By reason of Defendants' prominence and campaign of deception as to its business plans and the relationship of trust developed between each of the Defendants and Plaintiff, Plaintiff was justified in relying upon Defendants' representations.

121.   As a result of relying upon the foregoing misrepresentations, Plaintiff entered into a mortgage contract with Defendant "WAMU".

122.   As a result of Defendants' scheme described herein, Plaintiff cannot afford the mortgage.  Further, as a result of the Defendants' scheme, Plaintiff cannot refinance or sell the Property without suffering a loss of Plaintiff's equity.

123.   Without limiting the damages as described elsewhere in this Complaint, Plaintiff's damages as a result of the foregoing also include loss of equity in the Property, costs and expenses related to protecting Plaintiff, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs.

124.   Plaintiffs are entitled to such relief as is set forth in this Cause of Action.

### SIXTH CAUSE OF ACTION
### BUS. AND PROF. CODE SECTION 17200, ET.SEQ.
### [Against All Defendants and Doe Defendants]

125.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

126.   Defendants' conduct, for the reasons stated herein, is in direct violation of 12 U.S.C. § 2605(e), et seq. and 15 U.S.C. 1692, et seq.

127.   Defendant' conduct, for the reasons stated herein, is in direct violation of *Cal. Civil Code* section 1572; and *Cal. Penal Code* section 532(f)(a)(4).

///

128.   *Cal. Bus and Prof. Code* section 17200, et seq., prohibits acts unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature.

129.   As more fully described above, Defendants' acts and practices are unlawful, unfair, and fraudulent.  This conduct is ongoing and continues to this date.

130.   Defendants engage in unfair, unlawful[11] and fraudulent business practices with respect to mortgage loan servicing, and related matters by, among other things:

        (a)   executing and recording false and misleading documents. [12]

        (b)   executing and recording documents without the legal authority to do so;

        (c)   failing to disclose the principal for which documents were being executed and recorded in violation of *Cal. Civ. Code* section 1095;

        (d)   demanding and accepting payments for debts that were non-existent;

        (e)   violating the Security First Rule;

        (f)   reporting payments as late to credit bureaus without the legal right or authority to do so;

        (g)   acting as a beneficiary without the legal authority to do so, and;

        (h)   other deceptive business practices as described herein.

---

[11] "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, or court-made. *Saunders v. Superior Court*, 27 Cal.4th 832 (1994); *Hewlett v. Squaw Valley*, 54 Cal.4th 499 (1997).

[12] Defendants' recording of the Assignment of Deed of Trust violates *Cal. Penal Code* section 532(f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission.  The facts demonstrate that Defendants have committed mortgage fraud by filing the Assignment of Deed of Trust with the county recorder's office with the knowledge that the document contained a deliberate misstatement, misrepresentation, or omission of fact.

-33-

131.  As more fully described above, Defendants' acts and practices are likely to deceive members of the public.

132.  As more fully described above, Defendants' acts and practices are unfair and the harm caused by the conduct outweighs any benefits that the conduct may have.

133.  Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants violate several laws including *Cal. Bus. and Prof. Code* section 17200, et. seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

134.  Plaintiff alleges that Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors.  The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

135.  The foregoing acts and practices have caused substantial harm to California consumers including Plaintiff.

136.  By reason of the foregoing, Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to *Cal. Bus. and Prof. Code* sections 1720 and 17204.

137.  As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiffs have been injured in that a cloud has been placed upon title to Plaintiffs' Property and Defendants have failed to remove this cloud from Plaintiffs' title.

138.  Plaintiffs are entitled to an order compelling US BANK, CHASE, and any other Defendants claiming an interest in and to the Property to take any and all actions necessary to remove the cloud they have placed upon Plaintiffs' title and an order enjoining such Defendants from taking such actions again in the future.

-34-

## SEVENTH CAUSE OF ACTION
## CANCELLATION OF VOID CONTRACT
## CAL. CIVIL CODE §§1670.5, 1667, 1689, 3412;
## CAL FIN. CODE §22302

**[Against All Defendants and Doe Defendants]**

139. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

140. As more fully set forth above, the loans marketed, originated, sold or serviced by the Defendants were unconscionable for the following reasons: 1) the loans were predatory in nature in that they were targeted to those lease able to understand the detrimental terms in the loans; 2) the loans contained terms for the adjustable increase in the amount of interest to be paid, and by extension, the amount of the monthly mortgage payments that were to be paid over the terms of the loans, without regard to the ability of Plaintiff to be able to pay the increased payments upon adjustment, thus setting the borrowers up for likely or certain default and inevitable foreclosure in contravention of government policies favoring home ownership and disfavoring foreclosure; 3) loans that adjusted after a fixed length of time were deceptive because of the initial payments of the loan caused the borrower to feel comfortable in making the loan, and the Defendants did not advise, sufficiently or at all, the ramifications of the payment adjustment which would occur at the "Change Date"; and 4) the substantial increase in the loan balances caused by the pay option ARMs not only increased the monthly payments, but also stripped all available equity from the Plaintiff's home (as did the negative amortization loan).

141. Such unconscionable acts were and are in violation of California Financial Code §§4973 and 50204, as well as California Civil Code §§1596, 1708 and 1709, as the loans were injurious not only to Plaintiff, but also to the public at large, and were deceptive for the reasons stated above.

///

-35-

142. It was reasonably foreseeable by Defendants such egregious contract terms would cause a default of the loan, resulting in economic injury to Plaintiff, including loss of his home improvements, monetary losses such as relocation costs, damage to his credit rating, and emotional distress associated with the impending foreclosure.

143. Plaintiff also contends his mortgage loan was illegal and, therefore, void and unenforceable, as it was issued in violation of numerous California statutes pursuant to Civil Code §1667. Plaintiff alleges Defendants violated the following statutes: California Civil Code §§ 1572, 1596, 1670.5, 1677, 1708, 1709 and 171; Business and Professions Code §17200, et seq. and 17500 et seq.; and Financial Code §§ 4970 et seq., 22000, et seq., and 50000, et seq.

144. Based upon the numerous violations of California law, Plaintiff seeks cancellation of the loan agreement as void from formation. Based on such cancellation, Plaintiff seeks restitution of all monies paid pursuant to the contract, including earnest money, all closing costs, all principal and interest and taxes pad prior to default or foreclosure of the Property. Plaintiff offers and is willing to restore any consideration back to the Defendants that may be due after deduction of any offsets for the damages sustained by Plaintiff as may be determined at time of trial by the finder of fact.

## EIGHTH CAUSE OF ACTION– ACCOUNTING

### [Against All Defendants and Doe Defendants]

145. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

146. US BANK and CHASE have held themselves out to be Plaintiff's creditor and mortgage servicer. As a result of this purported relationship with

///

///

Plaintiff, said Defendants have a fiduciary duty to Plaintiff to properly account for payments made by Plaintiff. [13]

147.    As a result of the aforementioned fraudulent and illegal conduct, Plaintiff paid US BANK and/or CHASE his mortgage payments for a period of approximately four and a half years.  However, for the reason stated herein, none of this money was actually owed to US BANK and/or CHASE.  For that reason, these monies are due to be returned to Plaintiff in full.

148.    The amount of money due from the Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.  Plaintiff is informed and believes and thereon alleges that the amount due to him exceeds $75,000.00.

WHEREFORE, Plaintiffs pray as follows:

## NINTH CAUSE OF ACTION– QUASI CONTRACT

### [Against All Defendants and Doe Defendants]

149.    Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

150.    US BANK and/or  CHASE demanded monthly mortgage payments from Plaintiff and continued to collect payments from Plaintiff.  Plaintiff reasonably relied upon US BANK and/or CHASE 's assertion that they are entitled to the benefit of Plaintiff's mortgage payments.

151.    US BANK and/or CHASE knowingly accepted payments and retained them for their own use knowing that US BANK and/or CHASE did not acquire an

---

[13] To state a cause of action for accounting, a plaintiff must allege the existence of a fiduciary relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is impracticable.  5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775, p. 233.  The elements for a claim for accounting are:  1)  fiduciary relationship or other circumstances appropriate to the remedy; and 2) a balance due from the defendant to the plaintiff that can only be ascertained by an accounting.  See Witkin, California Procedure, Pleadings, section 776, p. 233 (4th ed.).

interest in Plaintiff's Note, such that they could accept or keep Plaintiff's payments. It would be inequitable for US BANK and/or CHASE to retain the payments it received from Plaintiff which it did not have legal authority to collect.   The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to their former position by return of the thing or its equivalent in money.

152.   Section 23 of the Deed of Trust states that: "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to recovery the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.   Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it."   US BANK and/or CHASE have been unjustly enriched by collecting monthly payments from Plaintiff when it has no interest in the Note.

153.   Plaintiff seeks restitution for any payments he made to US BANK and/or CHASE that were not paid to the lender or beneficiary, if any.

## TENTH CAUSE OF ACTION– PRELIMINARY INJUNCTION

### [Against All Defendants and Doe Defendants]

154.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

155.   To maintain the status quo between the parties while the matter is pending, Plaintiff seeks an order from the Court to retain title to the subject real Property and to remain in actual possession of the premises, by enjoining Defendants and/or their agents from seeking to evict or eject Plaintiff from the Property.   Plaintiff further seeks an order from the Court staying payment on the disputed mortgage.

156. Based upon the factual allegations made herein, Plaintiff has a meritorious case against Defendants and is likely to prevail at trial, based on those factual allegations, and proof of sustained damages. Plaintiff will suffer severe hardship if Defendants are allowed to foreclose on and subsequently evict Plaintiff while this matter is pending.

157. Wherefore, Plaintiff seeks an order from the Court upon motion for a preliminary injunction to protect his interest in the subject real Property which forms the basis of this action, as Plaintiff will suffer severe and irreparable harm should he lose his home, which is not only the basis for his claims against Defendants, but also unique and irreplaceable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

1.    For compensatory, special and general damages in an amount according to proof at trial, but not less than $5,000,000, against all Defendants.

2.    For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3.    For an order compelling Defendants to remove any instrument which does or could be construed as constituting a cloud upon Plaintiffs' title to the Property, including the purported Corporation Assignment of Deed of Trust;

4.    For an order finding that Defendants have no legally cognizable rights as to Plaintiff, the Property, Plaintiff's Promissory Note, Plaintiff's Deed of Trust or any other matter based on contract or any of the documents prepared by Defendants, tendered to an executed by Plaintiff;

5.    For the Court to issue an order restraining Defendants, their agents or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents or employees from doing so during the pendency of this matter;

1        6.    For an order compelling Defendants to disgorge all amounts wrongfully

2    taken by them from Plaintiff and returning the same to Plaintiff's interest thereon at

3    the statutory rate from the date the funds were first received from Plaintiff;

4        7.    For the costs of suit incurred herein;

5        8.    For reasonable attorneys' fees incurred; and

6        9.    For such other and further relief as the Court may deem proper.

7    Dated: November 20, 2012

8                      THE LAW OFFICES OF VERONICA M. AGUILAR

9

10

11   By: Veronica M. Aguilar, Esq.

                   Attorney for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-40-

**VERIFICATION**

**STATE OF CALIFORNIA, COUNTY OF ORANGE.**

I have read the foregoing: **VERIFIED COMPLAINT FOR DAMAGES, EQUITABLE RELIEF** and know its contents.

I am a party to this action. The matters stated in the foregoing documents are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

Executed on _____*11/2C*_____, 2012 at _____*Outcorope*_____, California.   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


_____
MICHAEL YOUNESSI

---

1
**VERIFICATION**

EXHIBIT "A"

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 12.0
* S R 0 0 0 5 0 4 4 6 7 2 S *

2012000455543 8:00 am 08/09/12
117 408 A32   2
0.00 0.00 0.00 0.00 0.00   3.00 0.00 0.00 0.00

RECORDING REQUESTED BY

CALIFORNIA RECONVEYANCE COMPANY

AND WHEN RECORDED MAIL TO

JPMC Records Center
Document Intake Department
700 Kansas Lane
Monroe, LA 71203

---

Space above this line for recorder's use only

Trustee Sale No. 745155CA     Loan No. 3013464502     Title Order No. 100713817-CA-MAI

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which hereby acknowledged, the undersigned, by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens and any rights due or become due thereon to **U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association as Trustee as successor by merger to LaSalle Bank, National Association as Trustee for WaMu Mortgage Pass-Through Certificates Series 2007-OA4 Trust, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **MICHAEL YOUNESSI, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**, and recorded on 04-02-2007 as Instrument # 2007000210328 in Book N/A, Page N/A, in the office of the ORANGE County Recorder, CALIFORNIA.

Property more commonly known as: 1611 CLIFF DRIVE, , NEWPORT BEACH, CA 92660
A.P.N. 049-221-08

DATE: 08/08/2012

JPMorgan Chase Bank, National Association, as attorney-in-fact for the Federal Deposit Insurance Corporation as Receiver of Washington Mutual Bank

_____
Colleen Irby, Vice President

FA_MERGE.DOC                                    1

Trustee Sale No. 745155CA Loan No. 3013464502 Title Order No. 100713817-CA-MAI

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

On 8/8/2012 before me, CARLA DODD Notary Public", personally appeared COLLEEN IRBY, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

CARLA DODD
Commission # 1863390
Notary Public - California
Los Angeles County
My Comm. Expires Jun 20, 2014

FA_MERGE.DOC

2